2026 IL App (2d) 250519-U
No. 2-25-0519
Order filed July 13, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

K.O., Petitioner-Appellee,

v.

FERNANDO OLEA, Respondent-Appellant.

Appeal from the Circuit Court of McHenry County.
Honorable Jeffrey J. Altman, Judge, Presiding.
No. 25-OP-953

JUSTICE McLAREN delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Plenary order of protection in favor of petitioner was supported by evidence that respondent (1) threatened to and did improperly remove the parties' children from petitioner, (2) caused a disturbance at petitioner's workplace, and (3) threatened petitioner with violence.

¶ 2    *Pro se* respondent, Fernando Olea, appeals the trial court's decision granting petitioner, K.O., an order of protection under the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2024)).  Respondent raises three issues on appeal: (1) whether the trial court's decision granting the order of protection was against the manifest weight of the evidence, (2) whether the trial court improperly relied on "matters outside the record and speculative

inferences," and (3) whether the remedies provided by the order of protection constitute an abuse of discretion. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4      Petitioner and respondent divorced on December 6, 2024. They share two children, born in 2018 and 2021. On August 18, 2025, petitioner filed a petition requesting both an emergency and a plenary order of protection. The trial court denied the request for an emergency order of protection. Respondent subsequently filed a motion to dismiss the petition, and petitioner filed a motion to strike and dismiss respondent's motion to dismiss, to which respondent replied. On October 30, 2025, the trial court held a hearing on both motions and the petition for a plenary order of protection.

¶ 5      At that hearing, petitioner testified to the following. She lives in Huntley. She does not know where respondent lives because he maintains that "he's not residing anywhere or that he's homeless." They communicate through "Our Family Wizard," a computer application designed for divorced couples who share custody of children. Petitioner and respondent have two daughters, ages six and four. When asked if the parties previously had an emergency order of protection in place, she answered:

>    "I had an emergency order that was then continued by [respondent] and his attorney throughout the entirety of the divorce in order to help keep things civil enough to finish out the divorce. And it was just putting it on hold, I guess, or dismissing it at the time was the only way that the divorce would finalize. ***."

Respondent has custody of the children two weekends per month, but he has "no overnights." Instead, he has custody from 9 a.m. to 7 p.m. on both Saturday and Sunday, and petitioner meets him at the Schaumburg Police Department for each exchange. Because respondent has asserted

that he might move to Chicago, Schaumburg was selected as a halfway point between Huntley and Chicago.

¶ 6    Petitioner went on to testify that, in February 2025, respondent contacted her over Our Family Wizard to let her know that he would need passports for the girls because he wanted to take them to New York. She testified that this was an "odd" request, given that his parenting time was limited to 10-hour increments. However, because the girls were with respondent at the time, petitioner wanted to avoid escalating the situation. Thus, she simply told him that they would not need passports to go to New York. Then respondent told her that he wanted to take the girls to Spain. Petitioner explained:

> "In fact our parenting plan is written that I would be the only one to hold the passports due to previous multiple times where he either withheld the children and concealed them or threatened to permanently take them away, and more significant threats that had been made. So no, there would be no reason to think that he could've—or should have been taking them out of the country."

She further testified that respondent's desire to take the children out of the country

> "was particularly concerning because [he had] been paid out a very large sum of money two months prior as the divorce finalized and [he] was *** still confirming that he was homeless and jobless. So there was really nothing to keep him from running if he was capable of getting them out of the country."

¶ 7    Petitioner noted that, "from the time the divorce started, there was [*sic*] *** threats *** to flee with [the children] and that [she] would never see them again." Petitioner filed for divorce in January 2024, but "threats against [her] job and lawsuits *** made [her] withdraw the divorce." Petitioner testified that, in April 2024, she came home from work early, which appeared to upset

respondent.  He then "quickly load[ed]" the children into a car and said, " 'Let's hope you see them again.  You probably should tell them bye.' "  He then disengaged the tracking device from the vehicle before leaving with the children.  He returned with the children later that night, telling petitioner, " 'You should be grateful.' "  Immediately after this incident, petitioner refiled for divorce.  She continued:

> "There were additional times after that where threats were made and one where he did take them overnight and was potentially saying he didn't know when he would return and maybe he would return after a holiday weekend.  He did end up returning early due to me disengaging the doorbell camera with threats of violence when he got back."

¶ 8    Petitioner testified to several threats of violence by respondent, including him telling her, " 'I can make bodies disappear.' "  On another occasion, she was trying to get their daughters to bed when respondent pulled one over to him and hugged her.  Respondent then told petitioner, " 'You can take her, but if you so much as touch me when you grab her, if you touch me at all, I will kick you in the throat.' "  Petitioner also stated that respondent owns at least one gun.

¶ 9    Petitioner went on to testify that respondent had sent her a certified letter in July 2025.  It was a "self-made cease and desist letter" that made "five accusations that [she] would say are much more veiled threats than they are actual accusations."  Respondent then began sending e-mails to petitioner's personal address as well as to her employer, attempting to confirm that she had read the certified letter, even though he already had a confirmation number proving that she had received the letter.  In response to respondent's conduct, petitioner's employer changed its standard operating procedures so that no deliveries would be given to her unless she expected them in advance.

¶ 10    Respondent did not object to any of petitioner's testimony during direct examination. While respondent was attempting to cross-examine petitioner, the trial court interrupted the proceedings several times to insist that respondent ask questions and petitioner answer them, stating in one instance, "This is not a discussion between the two of you. Do you understand?" Many of respondent's questions revolved around an investigation by the Illinois Department of Children and Family Services (DCFS). According to petitioner, the investigation was triggered when she contacted the police because respondent had left with the children "and there was an anticipation that [he] would be taking them for about an hour, but *** [he] said [he] might come back after the holiday weekend." Petitioner testified that DCFS concluded that the children had not been physically abused; however, she disputed respondent's assertion that the investigation was based on an "unfounded claim." She explained that she had not made a report to DCFS or alleged that the children were physically abused.

¶ 11    Next, counsel for petitioner called respondent to testify. Counsel asked respondent where he lived, and he gave an address in Chicago. Asked why that address did not appear in any of his court filings, respondent stated that all his mail is sent to a post office box in Huntley. Petitioner then rested, and respondent rested without presenting any evidence.

¶ 12    Following closing arguments, the trial court denied the pending motions and granted a plenary order of protection in favor of petitioner. The court explicitly stated that it found "the unrebutted testimony of the petitioner to be credible." The court determined that respondent's actions, as described by petitioner, constituted "harassment" under the Act (750 ILCS 60/103(7) (West 2024)) in three ways. First, in response to e-mails respondent sent to petitioner and her workplace, "her employer has implemented a plan of action wherein they will only accept deliveries that are for the petitioner when those deliveries are expected." According to the court,

- 5 -

this policy change qualified as "a disturbance at petitioner's place of employment" (*id.* § 103(7)(i)) and was "clearly *** the result of the actions of the respondent." Second, the court referenced petitioner's testimony that respondent made overt or implied threats to take or keep the children from petitioner. The court noted that respondent mentioned taking the children to New York or Spain and that, in April 2024, he took them and remarked that petitioner might not see them again. The court thus determined that respondent "improperly conceal[ed] a minor child from petitioner" and "repeatedly threaten[ed] to improperly remove *** minor child[ren] of petitioner's from the jurisdiction or from the physical care of petitioner[.]" *Id.* § 103(7)(v). Third, the court found that respondent "threaten[ed] physical force, confinement or restraint on one or more occasions" (*id.* § 103(7)(vi)), based on petitioner's testimony that respondent told her that he knew how to " 'make bodies disappear' " and he threatened to kick her in the throat if she touched him. The court noted that (1) under the Act, each of these instances of harassment was presumed to have caused petitioner emotional distress (*id.* § 103(7)) and (2) respondent did not rebut the presumption. Regarding the references to a DCFS investigation, the court found that the police, not petitioner, made the report to DCFS. The court further noted: "Ultimately the DCFS investigation was unfounded, and yet he—but I guess of significance is it's unclear as to what exactly the allegation was that was being investigated at that time."

¶ 13    Having established that the issuance of a plenary order was warranted, the trial court turned to the remedies:

> "So a [p]lenary [o]rder of [p]rotection will enter for a period of two years commencing today and ending on October 30, 2027. That during *** the pendency of that, the parties will communicate only through Our Family Wizard, only with regard to the minor children, and only in accordance with any provisions that are set forth under the

[d]issolution [p]roceeding 2024 DC 150; that the respondent shall cease and not make any threats to or to remove the children from the jurisdiction or from the possession or custody of the petitioner outside of any lawful parenting time which is—has been previously awarded under 24 DC 150; that he will have no direct contact with the petitioner, including during parenting exchanges to occur at the Schaumburg Police Department; that there will be no threats of violence or violence perpetrated against the petitioner; and that the respondent will surrender any firearms in his possession within 24 hours to the Huntley Police Department."

This timely appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    Respondent raises three issues on appeal: (1) whether the trial court's decision granting the order of protection was against the manifest weight of the evidence, (2) whether the trial court improperly relied on "matters outside the record and speculative inferences," and (3) whether the remedies provided by the order of protection constitute an abuse of discretion. In response, petitioner argues that the trial court properly relied on the evidence presented when it issued the order of protection and did not abuse its discretion when it determined the appropriate remedies. We agree with petitioner.

¶ 16    The purpose of the Act is to aid the victims of domestic violence by preventing future violence. *Radke v. Radke*, 349 Ill. App. 3d 264, 268 (2004). The Act reflects a comprehensive statutory scheme for reform of the legal system's historically inadequate response to domestic violence. *Moore v. Green*, 219 Ill. 2d 470, 488-89 (2006). Consistent with that goal, the Act protects any person who is abused by a family or household member and details broad remedies that an order of protection may include. *Id.* at 481. When entering an order of protection, the trial

court has discretion to tailor the order to address individual circumstances and needs, improve victim safety, and hold the perpetrator accountable for his or her acts. *Sanchez v. Torres*, 2016 IL App (1st) 151189, ¶ 22; see also 750 ILCS 60/214(b) (West 2024) (delineating various remedies available). Indeed, the Act expressly contemplates expanding criminal and civil remedies for protected persons. *Sanchez*, 2016 IL App (1st) 151189, ¶ 20.

¶ 17 On any petition for an order of protection, the central inquiry is whether a protected person has been abused. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). Whether there has been abuse is a question of fact that must be proved by a preponderance of the evidence. 750 ILCS 60/205(a) (West 2024); *Best*, 223 Ill. 2d at 348. A trial court's finding regarding abuse will not be disturbed unless it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 350. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if it is unreasonable, arbitrary, or not based on the evidence. *Id.* Under that standard, the reviewing court affords discretion to the fact finder because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id.* Accordingly, a reviewing court will not substitute its judgment for that of the trier of fact with respect to determinations of witness credibility, the weight afforded to the evidence, and the inferences to be drawn from the evidence. *Id.* at 350-51.

¶ 18 Turning to the first issue, we note that the Act authorizes a court to issue an order of protection for a person "abused by a family or household member[.]" 750 ILCS 60/201(b)(i) (West 2024). Section 103(1) of the Act (*id.* § 103(1)) defines "abuse" as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person *in loco parentis*." And section 103(7) defines "harassment" as follows:

"(7) 'Harassment' means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner. *Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress*:

(i) creating a disturbance at petitioner's place of employment or school;

* * *

(v) improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child from petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless respondent was fleeing an incident or pattern of domestic violence; or

(vi) threatening physical force, confinement or restraint on one or more occasions."

(Emphasis added.)  *Id.* § 103(7).

¶ 19 Here, based on petitioner's credible, unrebutted testimony, the trial court found that respondent harassed petitioner by (1) creating a disturbance at her place of work, as described in section 103(7)(i); (2) improperly concealing a minor child from petitioner and making repeated threats to improperly remove minor children of petitioner's from the jurisdiction or from the physical care of petitioner, as described in section 103(7)(v); and threatening physical force, as described in section 103(7)(vi).  See *id.* § 103(7)(i), (v), (vi).  Under the Act, these forms of harassment are presumed to cause emotional distress unless that presumption is rebutted by a preponderance of the evidence.  Because no evidence was presented to the trial court to rebut either petitioner's testimony regarding the conduct itself or the presumption that the conduct caused

emotional distress, respondent's challenge necessarily fails. The trial court based its findings on petitioner's credible, unrebutted testimony, and we cannot say that the opposite conclusion is clearly apparent, or that the findings are unreasonable, arbitrary, or not based on the evidence.

¶ 20    Respondent, however, argues that petitioner failed to prove any of the alleged instances harassment, in that (1) petitioner presented no evidence of respondent's "intent, motive, or state of mind" or the "purpose or necessity of [respondent's] alleged communications"; (2) she proved no disturbance at her workplace, as "[n]o employer testified, no documents were admitted, and the record reflects only alleged contact, not an actual disruption"; and (3) she "failed to prove that she in fact suffered emotional distress," and "the record reflects that DCFS investigated related allegations and found them unfounded ***, further undermining any claim of severe or ongoing emotional harm."

¶ 21    Respondent's arguments lack merit. First, petitioner proved that there was no reasonable purpose for (1) respondent's overt and implied threats to take or keep the children from petitioner, (2) his taking the children on one occasion while suggesting that petitioner might not see them again, (3) his commenting that he knew how to make bodies disappear and threatening to kick respondent in the throat if she touched him, and (4) his e-mailing petitioner's employer about his "cease and desist" certified letter. Petitioner could rely on the acts themselves and their surrounding circumstances without proving respondent's subjective intent. Respondent cites *Best* in asserting that "[c]laims of distress must be supported by specific evidence, such as medical records or corroborating testimony." *Best* is inapposite because there the finding on appeal was of physical abuse, not harassment. See *Best*, 223 Ill. 2d at 348, 350-51.

¶ 22    Second, petitioner testified that respondent's e-mails to her employer led it to alter its standard operating procedure with respect to deliveries addressed to her. Petitioner's testimony

was sufficient; the Act is not particular about the type of proof that can establish a disturbance. Moreover, the employer's policy change indeed qualified as a disturbance. See *In re Marriage of Kriley*, 2025 IL App (1st) 241923, ¶ 71 ("inappropriate e-mail" sent to a party's employers "understandably upset [the party] and created a disturbance on his job").

¶ 23 Third, each of the incidents the trial court identified as harassment gave rise to a presumption that the incident caused petitioner emotional distress. Petitioner did not need to separately establish emotional distress. Rather, respondent had the burden of overcoming the presumption of emotional distress. Respondent failed to do so. Respondent's reliance on the DCFS investigation is misguided because, although respondent first mentioned that investigation in cross-examining petitioner, he failed to identify the actual allegations DCFS investigated (apparently, the report was made by the police, not petitioner) and, thus, failed to establish its relevancy. As best we can tell, the investigation was prompted by an event (*i.e.*, respondent's threat to keep the children over a holiday weekend, beyond the anticipated time) that was unrelated to the specific incidents on which the court based the order of protection. And, most importantly, the only evidence of what DCFS concluded from the investigation was petitioner's testimony that DCFS found no evidence that respondent physically abused the parties' children. Petitioner, however, did not allege child abuse in seeking the order of protection.

¶ 24 Turning to the second issue raised by respondent, we consider whether the trial court improperly relied on matters outside the record or made speculative inferences. He alleges three deficiencies in petitioner's proof: (1) the certified letter that respondent sent to petitioner was not admitted into evidence, (2) "DCFS records were absent and the investigation unfounded," and (3) the nature of the workplace disturbance "was unclear." Regarding the issue of workplace

disturbance, respondent adds: "No employer testified, no documents were entered [into evidence], and [p]etitioner's hearsay was insufficient."

¶ 25     We note at the outset that respondent did not object to petitioner's testimony, so arguments regarding hearsay or the foundation for petitioner's testimony have been forfeited on appeal. See *People v. Lewis*, 165 Ill. 2d 305, 336 (1995). And we have already determined that the employer's change in policy, induced by respondent's conduct, constituted a disturbance under the Act. As for the certified letter, its contents were irrelevant. What mattered was that respondent e-mailed petitioner's employer about the letter. That contact, and the ensuing change in the employer's policy, were the sole bases for the trial court's finding that respondent caused a disturbance at petitioner's place of employment.

¶ 26     As for the DCFS investigation, respondent first raised it during his cross-examination of petitioner, attempting to undermine her case. In its findings, the court discussed the investigation but correctly discounted its significance because its details were lacking. That lack only frustrated respondent's case against the petition for a plenary order. Thus, respondent's argument is meritless.

¶ 27     Finally, respondent cites page 49 of the report of proceedings to assert that the trial court "expressly acknowledged" that "the nature of any 'disturbance' at work was unclear." However, on page 49 of the report of proceedings, the court discusses only instances of the removal of, and threats to remove, the minor children from petitioner's care. Where the court does discuss the workplace disturbance, there is no indication that the court found anything to be unclear.

¶ 28     In his third argument, respondent asserts that the trial court abused its discretion when it fashioned the remedies provided by the order of protection. Again citing page 49 of the report of proceedings, respondent argues that the trial court based the provisions on "speculative concerns" rather than on the evidence presented. However, as noted above, on page 49, the trial court

discusses only instances of the removal of, and threats to remove, the minor children from petitioner's care. We find no indication of speculation on the part of the trial court on page 49 or elsewhere in the record. As such, we find respondent's argument meritless.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 31    Affirmed.